```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/17/08
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MARK DeGEORGE,

                            Plaintiff,                        07 Civ. 2761 (RPP)

                        - against -                    **OPINION AND ORDER**

ACE AMERICAN INSURANCE COMPANY,

                            Defendants.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      Defendant ACE American Insurance Company moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking a declaration that it is not liable under the marine insurance policy issued by Defendant to Plaintiff Mark DeGeorge for the personal injury claims of Renee Holstein arising out of an incident on July 4, 2005. Plaintiff cross-moves for summary judgment, seeking a declaration that Defendant is required to defend or indemnify Plaintiff for Ms. Holstein's claims arising out of the July 4, 2005 incident. For the following reasons, Defendant's motion (Doc. No. 6) is granted, and Plaintiff's motion (Doc. No. 13) is denied.

**BACKGROUND**

      Plaintiff Mark DeGeorge is the owner of a 1982 36-foot Sea Ray Express vessel. (Def.'s Local Rule 56.1 Statement ¶ 1.) Defendant ACE American Insurance Company ("ACE") issued a marine insurance policy to Plaintiff that was effective from June 23, 2005 to June 23, 2006. (Id. ¶ 2.) The policy contained the following provision under "GENERAL PROVISIONS IN THE EVENT OF LOSS":

> NOTICE OF LOSS: You must report in writing to us, or our authorized agent, as soon as possible after the occurrence of any accident, loss, damage or expense that may be covered under this policy. This notice should state when, where and how the event occurred, and should include the names and addresses of any witnesses. . . . If you do not provide the notice to us as required by this section as soon as possible, any claim for such loss under this policy will be voided.

(Id. ¶ 3; Mercante Aff., Ex. 2 at Page 9 of 12.)

On July 4, 2005, Renee Holstein was a guest aboard Plaintiff's boat. (Def.'s Local Rule 56.1 Statement ¶ 4.) On July 4, 2005, Ms. Holstein claimed she was injured while diving into the water at the back of Plaintiff's boat. (Id. ¶ 5.) Later the same day, Plaintiff learned that Ms. Holstein claimed she was bleeding internally and drove her to the emergency room of Huntington Hospital. (Id. ¶¶ 6, 7.) Ms. Holstein was admitted to the Huntington Hospital for six days. (Id. ¶ 8.)

Subsequent to the incident, Plaintiff called his broker to report the accident, to ask what to do in case of a claim, and to confirm that his insurance policy was in effect. (Id. ¶ 9.) Plaintiff did not notify his insurance company, Defendant ACE, of the July 4, 2005 incident until approximately seven months later, on February 1, 2006. (Id. ¶ 10.) Pursuant to the terms, conditions, and warranties of the policy, ACE denied coverage for the July 4, 2005 incident by letter dated May 24, 2006. (Id. ¶ 11.)

The following elaboration of the facts is revealed in the transcript of Plaintiff's examination under oath held on March 21, 2006, which Plaintiff submits as an exhibit to his motion.[1] On July 4, 2005, Renee Holstein was one of several guests aboard Plaintiff's vessel. (Pl.'s Mem. Law, Ex. 1 at 18.) While Plaintiff was riding a jet ski about a mile

---

[1] Plaintiff filed no opposition to Defendant's Local Civil Rule 56.1 Statement, but filed a separate Rule 56.1 Statement containing no citations to the record in support of his cross motion. Defendant's motion could be granted based solely on Plaintiff's failure to oppose.

2

from the anchored boat, Ms. Holstein injured herself when she dove off the back of the boat. (Id. at 28.) Plaintiff learned that Ms. Holstein had "hit herself coming off the boat" a couple hours after he returned from jet skiing, but none of the guests including Ms. Holstein knew how the injury occurred. (Id. at 27.) Plaintiff observed that, for the remainder of the day, Ms. Holstein was "very slow," did not move around much, and was "sleeping all day." (Id. at 28-29.) Around 10:30 that night, Ms. Holstein went to the bathroom and "filled up the toilet with blood." (Id. at 29.) At that point, Plaintiff took her to the Huntington Hospital (id. at 29) where she was admitted due to internal bleeding (id. at 38) and remained for six days (id. at 40). Plaintiff learned that Ms. Holstein had damaged her kidney (id. at 37) and visited her three or four times during her six-day hospitalization (id. at 43).

About a week and a half after Ms. Holstein was injured, Plaintiff called The Whitmore Group, Ltd. ("Whitmore"), which Plaintiff referred to as his "broker." (Id. at 43.) It was through Whitmore that Plaintiff procured the marine insurance policy for his Sea Ray Express. (Id. at 7). He told his broker there was an accident on his boat and someone got injured, and asked what he should do about filing a claim. (Id. at 48, 55.) According to Plaintiff, he "didn't think there was any need at the time to report anything," but he "wanted to make sure that the insurance [he] had just bought was binding." (Id.) Within two weeks of calling his broker, Plaintiff obtained a toll-free number for INAMAR Marine Insurance, the subsidiary of ACE that issued Plaintiff's policy, and called to speak with someone about whether he needed to file a report. (Id. at 58-61.) Plaintiff ended the toll-free call after hearing an automated system on the other end of the line. (Id. at 60.)

3

Plaintiff's first communication with Defendant regarding the July 4, 2005 incident took place on February 1, 2006, when Plaintiff received a call from Janet Thomas, an adjuster for Defendant. (Id. at 52.) Ms. Thomas informed Plaintiff that a claim had been filed,[2] and Plaintiff confirmed that the accident had occurred and that he had not reported it to Defendant. (Id.) In connection with Defendant's investigation of Ms. Holstein's claim, Defendant's inside counsel conducted an examination of Plaintiff under oath on March 21, 2006. (Pl.'s Mem. Law, Ex. 1.) Following receipt of the transcript of the examination, Defendant, by letter dated May 24, 2006, denied coverage for the July 4, 2005 incident based on Plaintiff's late notice to Defendant, pursuant to the terms, conditions, and warranties of the policy. (Mercante Aff., Ex. 3.)

On October 5, 2006, Plaintiff filed a declaratory judgment action, seeking a declaration that Defendant is obligated to defend and indemnify Plaintiff for all claims, damages, and alleged causes of action being asserted by Ms. Holstein with respect to the July 4, 2005 incident.[3] (Compl. ¶ 25.) In its motion for summary judgment, Defendant argues that it is entitled to an order relieving Defendant of liability because Plaintiff failed to give Defendant timely notice of the July 4, 2005 incident and because Plaintiff has no valid excuse for the delay. In his cross motion, Plaintiff contends that he is entitled to summary judgment because Defendant failed to timely disclaim coverage and opposes Defendant's motion on the ground that his delay is excused by his good faith belief in non-liability.

---

[2] Ms. Holstein's attorney had reported the accident to Defendant by telephone on September 21, 2005 and by correspondence on December 5, 2005. (Mercante Aff., Ex. 3, Page 1 of 4; Pl.'s Local Rule 56.1 Statement ¶¶ 6, 7; see also Pl.'s Mem. Law, Ex. 1 at 45, 53.) Plaintiff did not learn that Ms. Holstein had retained counsel and had reported the accident to Defendant until Ms. Thomas called him. (Pl.'s Mem. Law, Ex. 1 at 44-45.)

[3] Prior to Plaintiff's filing of this action, Ms. Holstein brought a personal injury lawsuit in the Supreme Court of the State of New York. (Oral Argument Tr., Dec. 4, 2007, at 9.)

4

## DISCUSSION

Under Federal Rule of Civil Procedure 56(c), summary judgment is properly granted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When determining whether a genuine issue of material fact exists, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Braham v. Clancy, 425 F.3d 177, 181 (2d Cir. 2005).

Under New York law, an insured's obligation to give notice of loss is triggered when "from the information available relative to the accident, an insured could glean a reasonable possibility of the policy's involvement." C.C.R. Realty of Dutchess v. N.Y. Cent. Mut. Fire Ins. Co., 766 N.Y.S.2d 856, 857 (App. Div. 2003). Giving notice of loss as required in an insurance policy is a condition precedent to the insurer's liability. Security Mut. Ins. Co. of New York v. Acker-Fitzsimons Corp., 293 N.E.2d 76, 78 (N.Y. 1972). Absent a valid excuse, failure to give the required notice of loss precludes the insured from coverage, and the insurer need not show prejudice to rely on the defense of late notice. Id.; see also AXA Marine & Aviation Ins. Ltd. v. Seajet Indus. Inc., 84 F.3d 622, 628 (2d Cir. 1996) (holding that New York's no prejudice rule applies to notice of occurrence provisions).

In this case, Plaintiff's obligation to give notice of loss was triggered by his immediate knowledge that the accident had occurred. Although he did not witness the accident first hand, Plaintiff learned the same afternoon that Ms. Holstein had been

injured while diving off the back of his boat. (Pl.'s Mem. Law, Ex.1 at 27). He observed that Ms. Holstein had been unable to function normally for the remainder of the day (id. at 27-29), and had "filled up the toilet with blood" when she tried to urinate (id. at 29). Moreover, Plaintiff drove Ms. Holstein to the hospital on his own insistence (id.) and knew that she remained hospitalized for six days (id. at 40). Under these circumstances, Plaintiff would have been able to "glean a *reasonable possibility* of the policy's involvement," even if he could not assess with certainty his personal liability. See C.C.R. Realty of Dutchess, 766 N.Y.S.2d at 857 (emphasis added).

Plaintiff's marine insurance policy required Plaintiff to give notice of loss "as soon as possible after the occurrence of any accident, loss, damage or expense that may be covered under this policy." (Mercante Aff., Ex. 2 at Page 9 of 12.) A policy that requires notice to be given "as soon as possible" after an accident requires that notice be given within a "reasonable time under all the circumstances." Security Mut. Ins. Co. of New York, 293 N.E.2d at 79; see also Myers v. Cigna Prop. & Cas. Ins. Co., 953 F. Supp. 551, 556 (S.D.N.Y. 1997). In this case, Plaintiff allowed nearly seven months to elapse between July 4, 2005, when he became aware of the accident, and February 1, 2006, when he gave notice to Defendant of the accident by confirming its occurrence to Ms. Thomas.[4] Both federal and state courts have held that much shorter delays violate

---

[4] Plaintiff contends the delay was only seventy-nine days, counting the days that elapsed between the occurrence of the accident on July 4, 2005 and the notice of the accident Defendant received from Ms. Holstein's attorney by telephone on September 21, 2005. (Pl.'s Mem. Law ¶ 40, at 16.) Notice to the insurer by the injured party, however, does not constitute notice under the terms of Plaintiff's marine insurance policy. (See Mercante Aff., Ex. 2 at Page 9 of 12 (requiring "You"—i.e., the named insured—to give notice as soon as possible after the occurrence).) Nor does notice by the injured party excuse Plaintiff's failure to give timely notice to Defendant. See Heydt Contracting Corp. v. Am. Home Assurance Co., 536 N.Y.S.2d 770, 773 (App. Div. 1989) (stating that "it is entirely irrelevant whether defendant obtained immediate independent knowledge of the incident" and that "plaintiff was required to serve timely notice regardless of any actual knowledge by defendant"). Regardless, according to the case law cited in this opinion, even a seventy-nine-day delay would be untimely as a matter of law.

6

prompt notice provisions for notice of loss and notice of suit. See, e.g., Chicago Ins. Co. v. Halcond, 49 F. Supp. 2d 312, 320 (S.D.N.Y. 1999) (holding that unexplained delays of sixty-eight and thirty-eight days failed to satisfy the policy requirement of notice "as soon as practicable"); Myers, 953 F. Supp. at 556 (granting summary judgment on the basis that an unexplained delay of sixty days did not constitute notice "as soon as possible" as required by the policy); Pandora Indus., Inc. v. St. Paul Surplus Lines Ins. Co., 590 N.Y.S.2d 471, 471 (App. Div. 1992) (mem.) (holding that a thirty-one day delay failed to satisfy the policy condition). In view of these cases, it is plain that Plaintiff's seven-month delay is unreasonable as a matter of law.

As Plaintiff contends, failure to give notice may be excused when an insured has a reasonable belief of non-liability. Security Mut. Ins. Co. of New York, 293 N.E.2d at 78; United Talmudical Acad. of Kiryas Joel, Inc. v. Cigna Prop. & Cas. Co., 676 N.Y.S.2d 645, 646 (App. Div. 1998). The burden is on the insured to show the reasonableness of its belief, and whether that belief is reasonable is ordinarily a question for the trier of fact. United Talmudical Acad. of Kiryas Joel, Inc., 676 N.Y.S.2d at 646; Kreger Truck Renting Co. v. Am. Guar. & Liab. Ins. Co., 623 N.Y.S.2d 623, 624 (App. Div. 1995); Argentina v. Otsego Mut. Fire Ins. Co., 616 N.Y.S.2d 747, 747 (App. Div. 1994), aff'd 655 N.E.2d 166 (N.Y. 1995).

Plaintiff, however, fails to present evidence demonstrating a reasonable belief in non-liability. Plaintiff's knowledge of the seriousness of the injury Ms. Holstein sustained while a guest on his boat indicates that it would be unreasonable for Plaintiff to believe he was free from any potential civil liability. The fact that Plaintiff drove Ms. Holstein to the hospital and knew she was hospitalized for six days further supports the

7

conclusion that Plaintiff's belief in non-liability is unreasonable. See Zadrima v. PSM Ins. Cos., 616 N.Y.S.2d 817, 818 (App. Div. 1994) (holding that "no ordinary prudent person could have reasonably believed himself to be immune from potential civil liability" when he was aware that the injured party had been transported by ambulance to the hospital following an accident). Plaintiff's delay in giving notice of loss therefore cannot be excused.

Plaintiff argues alternatively that his notice of loss was timely because he reported the accident to Defendant's "authorized agent." However, Plaintiff testified at his examination that he reported the accident to "his broker," The Whitmore Group, Ltd., about a week and a half after the accident. (See Def.'s Local Rule 56.1 Statement ¶ 9; Pl.'s Local Rule 56.1 Statement ¶ 4.) Notice to a broker, as opposed to notice to an agent, is insufficient to satisfy the requirement of notice to the insurer. Security Mut. Ins. Co. of New York, 293 N.E.2d at 79 n.3; Whitehall Realty Assoc., LLC v. Hermitage Ins. Co., 835 N.Y.S.2d 715, 717 (App. Div. 2007). Plaintiff was undoubtedly aware that Whitmore was a brokerage firm and not an agent of Defendant: not only did he repeatedly refer to Whitmore as "his broker" (Pl.'s Mem. Law, Ex. 1 at 7, 48, 52, 59, 61), he testified that his broker "had suggested that [he] call ACE" (id. at 52), that he understood he had to submit a claim under his policy, and that he had called his "broker" only to find out if his policy had become effective (id. at 63-64). This testimony demonstrates that Plaintiff knew he had to report the incident independently to Defendant and that he knew Whitmore was not Defendant's agent. Under these facts, no reasonable juror could conclude that Plaintiff's report to Whitmore constituted notice to the insurer as required under the policy.

8

In his cross-motion for summary judgment, Plaintiff argues that Defendant is precluded from disclaiming liability based on Plaintiff's untimely notice because Defendant failed to disclaim in a proper and timely manner. For this argument, Plaintiff relies on New York Insurance Law § 3420(d), which requires an insurer to give written notice disclaiming liability or denying coverage "as soon as is reasonably possible" to the insured and the injured person. N.Y. Ins. Law § 3420(d) (McKinney 2007). As Defendant points out, however, § 3420(d) does not apply to policies of insurance in connection with ocean-going vessels. Id. §§ 3420(i), 2117(b)(3).

Plaintiff's Sea Ray Express is clearly an ocean-going vessel. The determination of whether a vessel is an "ocean-going vessel" is made by reference to the "express geographic limits expressed in the Declarations portion of the Policy," rather than to the factual "ocean going" capabilities of the particular vessel. Jefferson Ins. Co. of New York v. Cassella, 261 F. Supp. 2d 160, 164 (E.D.N.Y. 2003); Hartford Fire Ins. v. Mitlof, 123 F. Supp. 2d 762, 767 (S.D.N.Y. 2000). Plaintiff's marine insurance policy permits him to operate the Sea Ray Express in ocean waters, specifically in "Atlantic coastwise and inland tributary waters of the United States and Canada between St. John, New Brunswick and Morehead City, North Carolina." (Mercante Aff., Ex. 2, Atlantic Coast Navigation Warranty.) As Plaintiff's policy authorizes him to operate his vessel up and down the coast of the Atlantic Ocean from Canada to North Carolina, his vessel can only be classified as "ocean going," unlike vessels whose policy territory is confined to inland and coastal waters of rivers. See, e.g., Progressive Northeastern Ins. Co. v. Am. Ins. Co., No. 99 Civ. 8998, 2001 WL 959183, at *3 (S.D.N.Y Aug. 21, 2001) (concluding the vessel was not ocean going under a policy geographically limited to the land, tributaries,

9

inland lakes, bays and rivers of the continental United States or Canada, including the Long Island Sound); Hartford Fire Ins., 123 F. Supp. 2d at 767 (concluding the vessel was not ocean going under a policy geographically limited to "Inland and Coastal Waters of Hudson River Between Verrazano Narrows Bridge & Albany, Including East River & Western Long Island"). Having contracted for authorization to sail along the Atlantic Coast, Plaintiff cannot now claim that his vessel is not "ocean going" and rely on § 3420(d) in his motion for summary judgment.

Plaintiff has failed to show either a genuine issue of material fact with respect to his seven-month delay in giving notice of loss to Defendant or a reasonable belief in non-liability based on which his delay should be excused. In his cross-motion for summary judgment, Plaintiff relies on New York Insurance Law § 3420(d) and cases interpreting that section, which are inapplicable to this case. Accordingly, Defendant is entitled to an order declaring that it is relieved of liability under Plaintiff's marine insurance policy for the personal injury claims of Renee Holstein arising from the incident on July 4, 2005.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Doc. No. 6) is granted, and Plaintiff's cross-motion for summary judgment (Doc. No. 13) is denied.

IT IS SO ORDERED.

Dated: New York, New York
January 17, 2008

Robert P. Patterson, Jr.
U.S.D.J.

**Copies of this Opinion and Order sent to:**

*Attorneys for Plaintiff*
Thomas Stock, Esq.
STOCK & CARR
88 Second Street
Mineola, New York 11501
Tel: 516-747-2478
Fax: 516-747-2574

*Attorneys for Defendant*
James E. Mercante, Esq.
RUBIN, FIORELLA & FRIEDMAN LLP
292 Madison Avenue, 11th Floor
New York, NY 10017
Tel: 212-953-2381
Fax: 212-953-2462